The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Anthony M. CHAVEZ, Defendant–
Appellant.

No. 98CA1431.

Colorado Court of Appeals,
Div. A.

Nov. 26, 1999.

Certiorari Denied Aug. 21, 2000.*

---

* Justice COATS does not participate.

Ken Salazar, Attorney General, Christine Cates Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Anthony M. Chavez, appeals from the trial court's order denying his motion for post-conviction relief pursuant to Crim. P. 35(c). We affirm.

Pursuant to a plea agreement, defendant pled guilty to one count of possession of a controlled substance, a class four felony, while the People dismissed the remaining charges against him. The written plea agreement indicated that the parties had stipulated that defendant would be sentenced to eight years in a community corrections facility, or, if he was not accepted by community corrections, would receive a four-year sentence to the Department of Corrections (DOC).

In addition to the written plea agreement, defendant signed a form entitled "Request to Plead Guilty (Rule 11 Advisement)." By placing his initials next to each paragraph of the written advisement, defendant acknowledged that he understood its contents, including the fact that he "could be required to serve up to five years on parole *after* serving a sentence" (emphasis added). Defendant further confirmed that "[a]ny proposed plea agreement is fully set forth in the written plea agreement of the parties" and that he understood that the court would not be bound by any representations made to him regarding sentencing that were not contained in the written plea agreement.

After accepting defendant's guilty plea as knowingly, voluntarily, and intelligently entered, the trial court held a sentencing hearing at which counsel indicated that defendant had been rejected by community corrections. The court then sentenced defendant to a four-year term in the DOC "plus three years of parole."

Defendant, acting *pro se*, thereafter filed his Crim. P. 35(c) motion. As pertinent here, defendant claimed that his plea agreement provided for a stipulated four-year sentence, and that his attorney told him that any parole period would be served as part of, not in addition to, the four-year sentence. He claimed that, because the four-year prison sentence plus the three-year mandatory parole period resulted in an aggregate sentence of seven years, the sentence imposed exceeded the four-year stipulated sentence provided for under the plea agreement. Relying on *People v. Sandoval*, 809 P.2d 1058 (Colo.App. 1990), defendant claimed that he was entitled to specific performance of the plea agreement as he understood it, and requested that his prison sentence be reduced to one year so that his total sentence, including the parole period, would be four years.

The trial court denied the motion, concluding that defendant had been advised, both in writing and by the providency court, regarding the mandatory parole period.

Defendant contends that the trial court erred by denying his motion without holding a hearing. We disagree.

The supreme court recently decided *Craig v. People*, 986 P.2d 951 (Colo.1999), in which it overruled *People v. Sandoval, supra*. In *Craig*, the supreme court held that cases involving post-conviction challenges to the imposition of a mandatory parole period require a two-part inquiry.

First, the court must determine whether the defendant was explicitly promised a sentence that alters or eliminates the statutorily required mandatory parole period. Absent an express promise regarding mandatory parole, the agreement will not be interpreted as providing for a sentence related to mandatory parole that is statutorily prohibited. However, if such an express promise was made and was a material part of the plea agreement, the defendant's plea is rendered invalid unless the error is determined to be harmless. Because such an agreement calls for an illegal sentence, the defendant would not be entitled to specific enforcement of the plea agreement. *Craig v. People, supra*.

■ Second, the court must determine whether the defendant was adequately advised regarding the mandatory parole period. If the defendant received an inadequate advisement and the error was not harmless, the remedy is to reduce the defendant's sentence, provided such a modification would not result in an illegal sentence. If the defendant's sentence cannot be reduced, the only remedy for the improper advisement is to permit the defendant to withdraw his plea. *Craig v. People, supra.*

Applying the principles announced in *Craig* and its companion case, *Benavidez v. People,* 986 P.2d 943 (Colo.1999), we now turn to an analysis of defendant's claims.

### A.

■ Defendant claims that his plea agreement called for a stipulated four-year sentence comprised of a one-year prison term (a sentence below the minimum presumptive-range sentence) and a three-year mandatory parole period; thus, he contends that the sentence imposed violates the terms of his plea agreement. He claims that he is entitled to specific enforcement of the agreement as he understood it, and that his sentence must therefore be reduced. We disagree.

■ Initially, we note that the determination of the meaning of a plea agreement is a question of law. Accordingly, we review the trial court's determination of the meaning of a plea agreement and its interpretation of a party's obligation under the agreement *de novo. Craig v. People, supra.*

■ In interpreting a plea agreement, we determine "the meaning a reasonable person would have attached" under the circumstances. *Craig v. People, supra.* This is an objective test, and is thus not based on the subjective understanding of the defendant.

Here, the parties' agreement regarding sentencing as described in the written plea agreement provides that if defendant could not be sentenced to a community corrections facility, he would receive a four-year "DOC" sentence.

In *Craig,* the supreme court, interpreting nearly identical language in the defendant's plea agreement, rejected the claim that the parties intended the stipulated "DOC" sentence to limit the defendant's total sentence, including the mandatory parole term, to the period specified. The court concluded that a reasonable person would understand a stipulated DOC sentence as referring to the imprisonment component of the sentence only, not the defendant's "overall exposure." *Craig v. People, supra.*

Thus, contrary to defendant's assertion, the parties' sentencing agreement was limited to the amount of time he would serve in prison, and did not speak to the issue of mandatory parole.

We reject defendant's claim that counsel's alleged assurance that the stipulated four-year DOC sentence would include the mandatory parole period requires that we reach a different result.

■ We recognize that, in addition to the written documents, a court may consider extrinsic evidence, including oral statements made to the defendant, in interpreting the parties' plea agreement. However, consideration of such evidence "takes on special significance only where the plea agreement is itself ambiguous," or oral statements made to the defendant "add a term inconsistent with the plea agreement." *Craig v. People, supra; see also People v. Romero,* 745 P.2d 1003 (Colo.1987), *cert. denied,* 485 U.S. 990, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988).

■ Thus, when a written plea agreement is unambiguous, an inaccurate advisement by the providency court does not alter the clear terms of the parties' bargain, unless the court adds an entirely new term to the bargain. *See Craig v. People, supra; Benavidez v. People, supra.* Similarly, we conclude that an inaccurate oral advisement by counsel does not alter the terms of a plea agreement.

Here, the written documents unambiguously provided that defendant would receive a four-year DOC sentence followed by a mandatory parole period of up to five years. By signing the Rule 11 Advisement form, defendant acknowledged that "[a]ny proposed plea agreement is fully set forth in the written plea agreement of the parties." That

counsel allegedly told defendant that the parole term would be subsumed within the four-year DOC sentence does not change the fact that the terms of the parties' plea agreement clearly provided otherwise.

Accordingly, our *de novo* review of the parties' plea agreement convinces us that it did not purport either to alter or to eliminate the statutorily required mandatory parole period or to provide for an illegal prison sentence, and is not invalid under the first prong of the *Craig* test.

### B.

■ We also reject defendant's contention that he was not advised that he would be required to serve a three-year mandatory parole period after completing his prison sentence, and that the Crim. P. 35(c) court erred by denying his motion on that basis.

■ We review the record as a whole to determine whether the defendant was adequately advised regarding the parole consequences of his guilty plea. *Craig v. People, supra; People v. District Court,* 868 P.2d 400 (Colo.1994).

At the outset, we note that under the first prong of the *Craig* analysis, our task is to determine what the actual terms of the parties' plea agreement were, whereas under the second prong of the *Craig* test, we must evaluate the adequacy of the advisement defendant received regarding the terms of the plea agreement and whether the plea was knowingly and voluntarily entered. Thus, while inaccurate advice by the providency court or counsel does not affect our analysis of the terms of the parties' agreement under the first prong of the *Craig* test if the written documents are clear, such inaccurate advice may nevertheless affect the determination whether the defendant was adequately advised regarding the parole consequences of his plea. *See Craig v. People, supra.*

■ A proper advisement must inform the defendant of the maximum possible length of the mandatory parole period, and must indicate that the parole term "occurs after, in addition to, or distinct from" the period of imprisonment imposed. *Craig v. People, supra.* If a defendant receives ad-

vice, either from counsel or the providency court, that is different from the information contained in the written plea documents, he or she must request clarification from the court when given an opportunity to do so, rather than asserting that he or she was confused at the providency hearing as the basis for post-conviction relief. *See Craig v. People, supra* (noting that defendant confirmed at the providency hearing that he understood the written plea documents and did not express confusion or request clarification from the court regarding the application of the mandatory parole period to his sentence).

We note that through no fault of defendant's, the transcript of the providency hearing is not part of the record on appeal. The absence of the transcript does not affect our analysis of the advisement defendant received, however, because defendant did not allege in his motion that the providency court's advisement was deficient or inaccurate. Rather, he alleged only that the written documents and counsel did not adequately advise him regarding the parole consequences of his plea.

In *Craig*, the supreme court, reviewing a written advisement regarding parole identical to that contained in the written documents that memorialize the terms of defendant's plea agreement in this case, concluded that the advisement was sufficient to inform the defendant of the length of the mandatory parole period and the fact that it was a sentencing consequence distinct from the period of imprisonment imposed. For the reasons expressed in that opinion, we also conclude that defendant's written advisement was sufficient to inform him of the parole consequences of his guilty plea.

Moreover, at the sentencing hearing the court specifically indicated in defendant's presence that his sentence was "to the [DOC] for a period of four years, *plus three years of parole.*" Defendant did not request clarification from the court or suggest that he believed that under his plea agreement the mandatory parole period should be included in the four-year DOC sentence.

Accordingly, viewing the record as a whole, we agree with the Crim. P. 35(c) court's conclusion that, even if counsel had provided inaccurate advice regarding the parole period, defendant was not entitled to a reduction in his sentence on the basis of the alleged defect in his providency advisement and his subjective, albeit erroneous, understanding of the terms of the plea agreement.

Finally, because the record establishes as a matter of law that defendant was not entitled to the relief requested, the trial court did not err by denying his motion without holding a hearing. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

The order is affirmed.

Judge RULAND and Judge TAUBMAN concur.