Certiorari Granted, July 26, 2013, No. 34,093

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMCA-083

Filing Date: March 11, 2013

Docket No. 30,546

ARSENIO CORDOVA,

　　　　Plaintiff-Appellant,

v.

JILL CLINE, THOMAS TAFOYA,
LORETTA DELONG, JEANELLE LIVINGSTON,
CATHERINE COLLINS, ROSE MARTINEZ,
ESTHER WINTER, ELIZABETH TRUJILLO,
and JANE DOES 1 THROUGH 10,

　　　　Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Abigail Aragon, District Judge

David Henderson
Santa Fe, NM

for Appellant

Armstrong & Armstrong, P.C.
Julia Lacy Armstrong
Taos, NM

for Appellee Cline

The Herrera Firm, P.C.
Samuel M. Herrera
Taos, NM

for Appellee Tafoya

Steven K. Sanders & Associates, L.L.C.
Steven K. Sanders

Albuquerque, NM

for Appellees DeLong, Livingston, Collins, Martinez, Winter, and Trujillo

**OPINION**

**KENNEDY, Judge.**

**{1}** This case requires us to decide whether the New Mexico statute prohibiting strategic litigation against public participation (Anti-SLAPP statute) bars Plaintiff Arsenio Cordova's lawsuit against members of Citizens for Quality Education (CQE), an organization that tried to institute a recall election to remove Cordova from the school board. We conclude that the Anti-SLAPP statute does not apply to a hearing in district court as a part of the recall process. We reverse the district court's grant of the motion to dismiss and determine that Cordova successfully stated a claim for malicious abuse of process, and Defendants were not entitled to dismissal by the First Amendment. We dismiss the appeal as to Defendants Jill Cline and Thomas Tafoya, against whom the judgment is not final.

## I. BACKGROUND

**{2}** Cordova was a member and vice president of the Taos Municipal Schools Board of Education. CQE was formed to initiate a recall process against Cordova under the Local School Board Member Recall Act (Act). NMSA 1978, §§ 22-7-1 to -16 (1977, as amended through 1993). CQE members, many of whom were Taos County school employees, were unhappy with some of Cordova's actions on the school board and filed a recall petition with the Taos County Clerk on June 1, 2009. The clerk duly filed her application for a district court hearing on the sufficiency of the recall allegations as is required by the Act. *See* § 22-7-9.1(A).

**{3}** Under the Act, the hearing should have taken place within ten days. Section 22-7-9.1(B). However, CQE continued the case twice, and the hearing finally took place on September 16, 2009. CQE voluntarily dismissed the recall petition at the hearing. Because of the dismissal, the district court made no determination of whether sufficient facts existed to allow the recall process to continue. No record of those proceedings was provided for this case.

**{4}** Cordova filed this suit on September 18, 2009, against eight individual members of CQE, in keeping with his claim that CQE could not legally exist as an entity that may file a recall petition. The individual members of CQE who were named as Defendants were Jill Cline, Thomas Tafoya, Loretta DeLong, Jeanelle Livingston, Catherine Collins, Rose Martinez, Esther Winter, and Elizabeth Trujillo (collectively, Defendants). Cordova alleged that the recall petition was brought without demonstrating probable cause of his misfeasance or malfeasance in office and that CQE's voluntary dismissal of the petition precluded any judicial finding on the question of whether the petition was adequately supported as required under the statute. Cordova's complaint specifically alleged that CQE and its members engaged in a recall petition process that was supported by incompetent and back-dated

affidavits that CQE used to improperly accuse him of malfeasance and misfeasance in office. Cordova's complaint claimed that CQE brought the recall petition for purely political reasons because they were afraid his planned actions would hold them accountable for their own misdeeds, rather than because of misfeasance or malfeasance on his part. He stated that the incompetent affidavits, together with the postponement of the hearing and the eventual voluntary dismissal of the entire petition action, constituted an improper use of process in a judicial proceeding that was illegitimately motivated by hopes of damaging him. Based on these allegations, he maintained that he had been damaged and sought compensation under theories of malicious abuse of process, civil conspiracy, and prima facie tort.

**{5}** Defendants moved to dismiss the complaint under Rule 1-012(B)(6) NMRA for failure to state a claim and, alternatively, sought dismissal and attorney fees under the Anti-SLAPP statute. NMSA 1978, § 38-2-9.1 (2001). As an affirmative defense, Defendants maintained that the recall petition was protected under the First Amendment of the United States Constitution and New Mexico's Anti-SLAPP statute. Cline and Tafoya also counterclaimed against Cordova for malicious abuse of process.

**{6}** The district court held a hearing on April 29, 2010, to consider Defendants' motions to dismiss and Cordova's motion to dismiss the two counterclaims. On May 14, 2010, the district court issued its order granting Defendants' motions to dismiss. The court relied on the Anti-SLAPP statute and the First Amendment to find that Defendants' conduct in the recall petition was protected and dismissed Cordova's civil conspiracy and prima facie tort claims for failure to adequately plead sufficient facts to establish either tort. The district court did not address Cline's and Tafoya's counterclaims. The order also set rates for attorney fees and permitted Defendants to submit requests for the fees as allowed under the Anti-SLAPP statute. Section 38-2-9.1(B). Cordova now appeals.

## II.    DISCUSSION

**{7}** On appeal, Cordova argues that (1) the Anti-SLAPP statute does not apply to his suit below, (2) his complaint properly stated a claim for malicious abuse of process, (3) Defendants are not immune to the suit under the First Amendment, and (4) CQE did not have standing to bring the recall because it was not a legally cognizable organization. Defendants contest those issues and argue that Cordova's appeal is not from a final judgment. We address each issue in turn.

### A.    The Anti-SLAPP Statute Does Not Apply

**{8}** Cordova argues that his suit was improperly dismissed under the Anti-SLAPP statute. The Anti-SLAPP statute permits a defendant, who believes that he or she is being sued in retaliation for certain protected forms of public speech and participation, to file an expedited motion to dismiss. Section 38-2-9.1. We review the application of the Anti-SLAPP statute de novo. *State v. Herrera*, 2001-NMCA-007, ¶ 6, 130 N.M. 85, 18 P.3d 326 (stating that "statutory construction and interpretation are questions of law reviewed de novo").

**{9}** The Anti-SLAPP statute is intended to save a defendant from incurring the expense

and inconvenience of defending a lawsuit that seeks to chill a defendant exercising his or her constitutional rights. Frederick M. Rowe & Leo M. Romero, *Resolving Land-Use Disputes By Intimidation*: *SLAPP Suits in New Mexico*, 32 N.M. L. Rev. 217, 227 (2002). The statute states:

> Any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting in a quasi-judicial proceeding before a tribunal or decision-making body of any political subdivision of the state is subject to a special motion to dismiss[.]

Section 38-2-9.1(A). The purpose of the Legislature in adopting the statute is codified at NMSA 1978, Section 38-2-9.2 (2001), which states that its policy is to "protect the rights of its citizens to participate in quasi-judicial proceedings before local and state governmental tribunals" because "[b]aseless civil lawsuits . . . have been filed against persons for exercising their right to petition and to participate in quasi-judicial proceedings."

**{10}** "In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent[,] we look to the language used and consider the statute's history and background." *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). When the language of a statute is clear and unambiguous, we will give effect to the statute's language and refrain from further interpretation. *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153.

**{11}** The Anti-SLAPP statute protects citizen participation in a "public meeting in a quasi-judicial proceeding." Section 38-2-9.1(A). The statute defines "public meeting in a quasi-judicial proceeding" as "any meeting established and held by a state or local governmental entity, including without limitations, meetings or presentations before state, city, town[,] or village councils, planning commissions, review boards[,] or commissions." Section 38-2-9.1(D). We must therefore determine if a recall petition and resulting statutory sufficiency hearing before a district court constitute such participation.

**{12}** To begin the recall process, a petitioner collects signatures under the procedures of Section 22-7-6. Pursuant to Article XII, Section 14 of the New Mexico Constitution, a petition for a recall election must cite grounds of malfeasance, misfeasance, or violation of the oath of office. The petition citing the specific charges in support of the recall, which charges "shall constitute misfeasance in office, malfeasance in office[,] or violation of oath of office[,]" is submitted to the county clerk. Section 22-7-8(C), (D). The clerk requests a hearing before the district court to evaluate whether the petition alleges sufficient cause to proceed with the recall. Sections 22-7-9(A)(2), -9.1(A), (B). At the sufficiency hearing, the court is charged with reviewing the signatures on the petition along with "affidavits submitted by the petitioner setting forth specific facts in support of the charges." Section 22-7-9.1(C); *Doña Ana Cnty. Clerk v. Martinez*, 2005-NMSC-037, ¶ 11, 138 N.M. 575, 124 P.3d 210 (per curiam); *see CAPS v. Bd. Members*, 113 N.M. 729, 730, 832 P.2d 790, 791 (1992) (describing how petitions are evaluated before the district court).

**{13}** At the hearing, the district court evaluates the petition to determine whether the petitioner stated a claim and assumes all facts pled in the petition to be true. Section 22-7-9.1(C); *Martinez*, 2005-NMSC-037, ¶ 11 (holding that "the district court was not required to weigh disputed issues of fact"). Under the *CAPS* rule, sufficient evidence of misfeasance or malfeasance must be found to exist.

**{14}** Cordova based his suit on the problems he alleged with Defendants' affidavits, CQE's standing, and voluntary dismissal, which all stem from the hearing. Under a plain reading of the Anti-SLAPP statute, we conclude that a sufficiency hearing before a district court for a recall petition is not a public meeting or quasi-judicial proceeding as defined by the Anti-SLAPP statute. It is a judicial proceeding. We consequently hold that the Anti-SLAPP statute does not apply and, therefore, the district court improperly dismissed Cordova's suit under the Anti-SLAPP statute and awarded attorney fees to Defendants.

**B.      The Appeal is Not From a Final Judgment With Respect to Cline and Tafoya Due to Their Pending Counterclaims**

**{15}** Cline and Tafoya argue that this Court does not have jurisdiction over this appeal because the district court left Cline's and Tafoya's counterclaims unresolved. Cordova argues that the Anti-SLAPP statute provides for an "expedited appeal" from a ruling on a motion to dismiss that would include his appeal against all Defendants. We agree with Cline and Tafoya.

**{16}** The district court's order dismissed Cordova's claims against all Defendants, but left Cline's and Tafoya's counterclaims unresolved. *See Khalsa v. Levinson*, 1998-NMCA-110, ¶ 12, 125 N.M. 680, 964 P.2d 844 (stating that, in civil cases, this Court has jurisdiction over final orders). Pursuant to Rule 1-054(B)(2) NMRA, the judgment is final for Defendants who did not have counterclaims against Cordova. However, "[a]n order disposing of the issues contained in the complaint but not the counterclaim is not a final judgment." *Watson v. Blakely*, 106 N.M. 687, 691, 748 P.2d 984, 988 (Ct. App. 1987), *overruled on other grounds by Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 824 P.2d 1033 (1992).

**{17}** Our decision regarding Cordova's appeal applies only to those Defendants without pending counterclaims, not Cline and Tafoya. "In multiple party suits, Rule [1-054(b)(2) NMRA] authorizes a judgment adjudicating 'all issues' as to one or more, but fewer than all parties." *Stotlar v. Hester*, 92 N.M. 26, 27, 582 P.2d 403, 404 (Ct. App. 1978). "Such judgment shall be a final one unless the court, in its discretion, expressly provides otherwise." *Id.* (internal quotation marks and citation omitted). Because all issues were adjudicated regarding the remaining Defendants, we consider it a final judgment for appeal with respect to them despite the failure of Cordova's argument that the Anti-SLAPP statute provides grounds for interlocutory appeal.

**C.      Cordova's Complaint States a Claim for Malicious Abuse of Process**

**{18}** We now address the district court's determination that Cordova's complaint failed to state a claim for malicious abuse of process. A motion to dismiss for failure to state a

claim under Rule 1-012(B)(6) NMRA tests the legal sufficiency of the complaint, not the facts that support it. *Envtl. Improvement Div. of N.M. Health & Env't Dep't v. Aguayo*, 99 N.M. 497, 499, 660 P.2d 587, 589 (1983). "Under Rule 1-012(B)(6), dismissal is proper when the law does not support the claim under any set of facts subject to proof." *Wallis v. Smith*, 2001-NMCA-017, ¶ 6, 130 N.M. 214, 22 P.3d 682. "We review rulings on such motions de novo, accepting all well-pleaded factual allegations as true and resolving all doubts in favor of the sufficiency of the complaint." *Id.* Although Tafoya's motion to dismiss included an affidavit, which would generally transform the motion into one for summary judgment pursuant to Rule 1-012(C), we decline to treat it as a summary judgment motion if "[i]t would be unfair . . . we would be affirming the judgment on a ground not relied upon, or even pursued, below." *Dunn v. McFeeley*, 1999-NMCA-084, ¶ 17, 127 N.M. 513, 984 P.2d 760.

**{19}** As a threshold matter, Defendants argue that Cordova's complaint, in response to the recall petition, violates their privilege to petition the courts under the First Amendment. They rely here, as they did below, on the *Noerr-Pennington* doctrine, which grew out of the antitrust arena and requires a higher standard to prove a sham lawsuit in light of the protections of the First Amendment. The district court found this issue to be determinative and dismissed the complaint not only under the Anti-SLAPP statute, but also under the First Amendment. We do not agree that Defendants' petition was shielded from Cordova's suit by the First Amendment.

**{20}** The New Mexico Supreme Court created the tort of malicious abuse of process to ensure that parties abide by certain procedural boundaries once they initiate a proceeding. *See DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶¶ 15, 17, 124 N.M. 512, 953 P.2d 277 (describing the elements of the previous torts and creating the new tort), *overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, ¶ 18, 145 N.M. 694, 204 P.3d 19 (describing the creation of the tort); *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 12, 142 N.M. 150, 164 P.3d 31 (same). In *DeVaney*, the Court addressed the fact that "[m]eaningful access to the courts is a right of fundamental importance to our system of justice." 1998-NMSC-001, ¶ 19. It noted the First Amendment's implication and determined that "we must construe the tort of malicious abuse of process narrowly in order to protect the right of access to the courts." *Id.* The *DeVaney* Court included a footnote mentioning that "the importance of the right to petition . . . has caused the courts of some states to apply the more stringent requirements of the *Noerr-Pennington* doctrine[.]" *Id.* n.1. This footnote appears to be the only mention of the *Noerr-Pennington* doctrine in New Mexico law. We conclude that the Supreme Court was aware of the *Noerr-Pennington* line of cases when creating the tort of malicious abuse of process and that it declined to apply the doctrine because the new tort satisfied concerns about the right of access to the courts. As an intermediate appellate court, we are bound by the Supreme Court's holding on this issue and, therefore, do not credit Defendants' argument that the *Noerr-Pennington* doctrine's interpretation of the First Amendment protects them from a common-law malicious abuse of process claim.

**{21}** As neither the Anti-SLAPP statute nor the First Amendment prevents Cordova from bringing his suit for malicious abuse of process, we now examine the claim itself. The

elements of malicious abuse of process are "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham*, 2009-NMSC-007, ¶ 29.

**{22}** The first element—an improper use of process—may be shown by "(1) filing a complaint without probable cause[;] (2) an irregularity or impropriety suggesting extortion, delay, or harassment"; or (3) other conduct formerly actionable under the tort of abuse of process. *Fleetwood Retail*, 2007-NMSC-047, ¶ 12 (internal quotation marks and citation omitted). A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices, such as "discovery, subpoenas, and attachment[s]"; or (2) "indicates the wrongful use of proceedings, such as an extortion attempt[.]" *DeVaney*, 1998-NMSC-001, ¶ 28 (listing examples of abuse of process) (internal quotation marks and citation omitted).

**{23}** As we have already discussed, the hearing before the district court as part of the recall petition was a judicial proceeding. Cordova alleged in his complaint that the act of filing affidavits that did not comport with the requirements of Rule 1-056 NMRA was an improper act in the regular prosecution of a claim. He alleged that the affidavits refer to events that took place after their notarization dates and that this was an improper use of process. He also claims that the affidavits, "on their face, are not competent, replete with rumor and innuendo." Cordova also claimed that the delay and eventual voluntary dismissal of the charges of malfeasance brought in the petition was an improper use of process and that Defendants brought the recall petition for an improper purpose.

**{24}** Cordova's complaint raises enough doubts about the propriety of the affidavits and Defendants' actions to state a claim that Defendants misused procedural devices pursuant to the definition in *DeVaney*, thereby, satisfying the first element of an abuse of process claim. 1998-NMSC-001, ¶ 28. Cordova alleged that Defendants' motives in filing the recall petition were improper and were to avoid accountability for misdeeds. Cordova also alleges that he has suffered damages. We take Cordova's well-pleaded facts to be true. *Wallis*, 2001-NMCA-017, ¶ 6. He therefore stated a claim for malicious abuse of process. We reverse the district court's dismissal of the malicious abuse of process count and remand to let that claim proceed.

**D.      CQE Had Standing to Bring a Recall Petition**

**{25}** Cordova also sought declaratory judgment, claiming that CQE, as an unincorporated association, lacked standing to bring the recall petition because it lacked the substantive right to vote. Although it appears that he only sought the judgment in order to bolster his claim that the recall was brought improperly, we do not assume that and, therefore, address the issue. It is undisputed that CQE is an unincorporated association registered with the Taos County Clerk, pursuant to NMSA 1978, Section 53-10-1 (1937). The Act explicitly defines a petitioner as a "person, group[,] or organization initiating the petition[.]" Section 22-7-6(D)(4). Several New Mexico cases indicate that voters have created organizations to effect recall elections. *See CAPS*, 113 N.M. at 729, 832 P.2d at 790 (stating simply that the

appellants submitted recall petitions pursuant to the Act); *Martinez*, 2005-NMSC-037, ¶ 1 n.1 (stating that the petitioning group was "RECALL," which stood for "Rectify Educational Concerns about Lousy Leaders" (internal quotation marks omitted)); *State ex rel. Citizens for Quality Educ. v. Gallagher*, 102 N.M. 516, 517, 697 P.2d 935, 936 (1985) (referring to "petitioners and other qualified electors"). New Mexico laws allow an unincorporated association to sue or be sued in its common name for the purpose of enforcing for or against it any substantive right. NMSA 1978, § 53-10-6(A), (B) (1959).

**{26}** In New Mexico, an organization may have standing if "(a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the organization's purpose, and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *ACLU of N.M. v. City of Albuquerque*, 2008-NMSC-045, ¶ 30, 144 N.M. 471, 188 P.3d 1222. The New Mexico Constitution provides that elected local school board members are subject to recall "by the voters of the school district from which elected." N.M. Const. art. XII, § 14.

**{27}** It is undisputed that Defendants who comprised CQE are residents of Taos County. Because they are residents and may vote in Taos County, CQE members would have standing to bring the recall petition in their own right. Therefore, we affirm the district court's dismissal of Cordova's claim for declaratory judgment.

### E. Cordova's Other Claims Were Unsupported on Appeal

**{28}** The district court dismissed Cordova's claims for prima facie tort and civil conspiracy for failure to plead sufficient facts. Although a heading in the brief-in-chief states that the complaint stated a cause of action for the prima facie tort claim, Cordova fails to support the statement with authority or analysis. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). This Court will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. Cordova's brief-in-chief only mentions the concept of civil conspiracy in his argument for why he sued Defendants individually. For the same reasons regarding the lack of authority or argument of a claim, we consider neither Cordova's civil conspiracy nor prima facie tort claim on appeal.

### III. CONCLUSION

**{29}** The Anti-SLAPP statute does not apply to a determination of probable cause by a district court in a recall petition process because it is a judicial proceeding and not a quasi-judicial process covered by the statute. We reverse the award of attorney fees under the statute. We also reverse the district court's dismissal of Cordova's malicious abuse of process suit because his complaint properly stated a claim, and Defendants are not shielded by the First Amendment. We affirm dismissal of the civil conspiracy, prima facie tort, and declaratory judgment counts.

**{30} IT IS SO ORDERED.**

_____<br>
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *Cordova v. Cline*, No. 30,546**

**APPEAL AND ERROR**
Attorney Fees
Standard of Review

**CIVIL PROCEDURE**
Counterclaim
Summary Judgment

**CONSTITUTIONAL LAW**
Freedom of Association
Freedom of Speech
Freedom of the Press
Standing

**GOVERNMENT**
Education and Schools
Elections
Recalls

**JUDGMENT**
Final Judgment

**MISCELLANEOUS STATUTES**
Anti-SLAPP

**STATUTES**
Interpretation
Legislative Intent

**TORTS**
Malicious Abuse of Process
Prima Facie Tort